CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

07/17/19

JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:18-cr-00031-001 |
| v. | |
| | MEMORANDUM OPINION |
| SAUL QUINTEROS GUZMAN, | |
| *Defendant.* | JUDGE NORMAN K. MOON |

This matter is before the Court on Defendant's Motion to Dismiss his Indictment for reentry of a removed alien in violation of 8 U.S.C. § 1326(a), seeking to collaterally attack the underlying expedited removal order pursuant to 8 U.S.C. § 1326(d). (Dkt. 29 at l; *see* Dkt. 39 at 1). The matter has been fully briefed and the Court held a hearing. For the reasons set out below, the Court will deny Defendant's Motion to Dismiss his Indictment.

## I.    FACTS AND PROCEDURAL HISTORY

Defendant is a citizen of El Salvador who entered the United States on March 16, 2016 by crossing the Rio Grande River. (Dkt. 29-3 (Form I-867A (Record of Sworn Statement of Saul Ulises Quinteros-Guzman))). Immigration officials detained him shortly after crossing the border and placed him in expedited removal. On March 17, 2016, a Border Patrol Agent provided Defendant with the following advisement:

> You do not appear to be admissible or to have the required legal papers authorizing your admission into the United States. This may result in your being denied admission and immediately returned to your home country without a hearing. . . . This may be your only opportunity to present information to me and the Department of Homeland Security to make a decision. . . . Except as I will explain to you, you are not entitled to a hearing or review.

(Dkt. 29-3).   The advisement informed Defendant about United States law protecting certain persons who face persecution, harm or torture upon return to their home country.  (*Id*.).  Defendant consented to give a sworn statement and answered "No" when asked if he feared "that [he would] will be persecuted or tortured" if sent back to his home country (El Salvador).  (*Id.*).  Separately, Defendant answer in the negative when asked if he had any fear or concern about being returned to his home country or removed from the United States.   He also replied in the negative when asked if he would be harmed if he returned to his home country or country of last residence.  (Dkt. 29-3, Form I-867B (Jurat for Record of Sworn Statement)).

On March 17, 2016, the Department of Homeland Security determined that the Defendant was inadmissible under the Immigration and Nationality Act ("INA"), and subject to removal because: (1) he was "not a citizen or national of the United States"; (2) he was "a native of EL SALVADOR and a citizen of EL SALVADOR"; and (3) he was "an immigrant not in possession of a valid unexpired immigration visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act."   (Dkt. 29-2 (Form I-860, Determination of Inadmissibility)).

On March 18, 2016, Defendant was given an additional advisement specific to citizens of El Salvador, which he acknowledged receiving.  This advisement informed Defendant that if he was found to have a credible fear of persecution if returned to El Salvador he could obtain a lawyer to represent him in front of an immigration judge and that he would be provided a list of lawyers who would speak with him at a very low or no cost.  (Dkt. 29-5).  Defendant declined to pursue this option.  (*Id.*).  Neither the Government nor the Defendant have brought to the Court's attention any other removal proceeding document which may have provided notice of a right to counsel beyond that identified in the March 18, 2016 advisement.

On March 18, 2016, Defendant was found to be inadmissible as charged based on the determination of inadmissibility noted above and evidence presented during inspection or examination, and was ordered to be removed from the United States. (Dkt. 29-2 (Form I-860, Order of Removal)). Defendant was subsequently removed on March 31, 2016. (Dkt. 29-1). Defendant was informed that he was prohibited from entering, attempting to enter, or being in the United States, for a period of 5 years from the date of his departure from the United States due to his being found to be inadmissible as an arriving alien. (*Id.*).

On November 20, 2018, the Grand Jury indicted Defendant for a violation of 8 U.S.C. § 1326(a). The Grand Jury charged that on or about October 17, 2018, within the Western District of Virginia, Saul Quinteros Guzman, an alien who was removed from the United States on or about March 31, 2016, was found in the United States without having obtained the express consent of either the Attorney General of the United States or the Secretary of the Department of Homeland Security to reapply for admission into the United States. (Dkt. 12).

## II.  LEGAL STANDARD

Criminal defendants may allege defects in indictments in pretrial motions, including "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). A court "should regard all well pleaded facts as true when considering a motion to dismiss an indictment." *United States v. Dove*, 70 F. Supp. 2d 634, 636 (W.D. Va. 1999). Motions to dismiss indictments, therefore, should generally be denied unless the defendant demonstrates that "the allegations therein, even if true, would not state an offense." *United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004).

To obtain a conviction under 8 U.S.C. § 1326(a), the Government must show that the defendant is an "alien who - (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding and thereafter (2) enters, attempts to enter, or is at any time found in, the United States," with certain exceptions not applicable here.  A valid "deportation order is an element of the offense of illegal reentry."  *United States v. El Shami*, 434 F.3d 659, 663 (4th Cir. 2005).

## III.    ANALYSIS

The parties dispute whether Defendant can collaterally attack the validity of Defendant's 2016 expedited removal order and, if so, the proper outcome of that collateral attack.[1]  Defendant's motion to dismiss is based on a collateral attack to prosecution under 8 U.S.C. § 1326(d).  (Dkt. 29 at 1).  The Defendant was previously removed from the United States pursuant to an expedited removal proceeding.  He now argues that under *United States v. Mendoza-Lopez*, 481 U.S. 828, 838-39 (1987), a person charged with a violation of § 1326 has a due process right to judicial review of the predicate expedited removal "in any subsequent proceeding in which the result of the [earlier] deportation proceeding is used to establish an element of a criminal offense."  (Dkt. 29 at 2-3 (quoting *Mendoza-Lopez*)).  Defendant argues that the scope of *Mendoza-Lopez* includes an expedited removal proceeding, and review of the predicate removal order may be undertaken pursuant to 8 U.S.C. § 1326(d).  He further argues that, upon judicial review, the Court should find that the prior removal was invalid because it was fundamentally unfair.

---

[1] References to the expedited removal statute, expedited removal or to expedited removal proceedings are to removal pursuant to 8 U.S.C. § 1225(b)(1).  These proceedings are distinct from those applicable to some aggravated felons under 8 U.S.C. § 1228(b), which are also referred to as expedited removal proceedings.

4

Before examining the arguments of the parties, the Court will review relevant provisions of the United States Code and related regulations. Under 8 U.S.C. § 1225(b)(1) ("Expedited Removal Statute") and its companion regulations, at the time of Defendant's 2016 removal two classes of aliens were subject to expedited removal if immigration officers determined they were inadmissible due to misrepresentation of a material fact in seeking a visa, other documentation or admission to the United States or due to a lack of immigration entry papers: (1) aliens "arriving in the United States"; and (2) aliens encountered within 14 days of entry without inspection and within 100 air miles of any U.S. international border. 8 U.S.C. § 1225(b)(1)(A)(i) & (iii); 8 C.F.R. § 235.3(b)(1); *Designating Aliens for Expedited Removal*, 69 Fed. Reg. 48877-01, 2004 WL 1776983 (effective Aug. 11, 2004).

In such cases and upon proper findings, the immigration officer "shall order the alien removed from the United States without further hearing or review" unless the alien indicates an intention to apply for asylum or a fear of persecution upon return to his or her country. In cases where an alien indicates that intention or fear, the immigration officer must refer the alien for an interview by an asylum officer. 8 U.S.C. § 1225(b)(1)(A)(i), (ii).

In every case in which the expedited removal proceedings will be applied and before removing an alien, the examining immigration officer must create a record of the facts of the case and statements made by the alien. This is accomplished by means of a sworn statement using Form I-867AB. The examining immigration officer must read (or have read) all the information on Form I-867A to the alien (including the determination to be made, allegations of removability, citizenship, and the like). If the alien is willing to answer questions and give a statement, the examining immigration officer shall record the alien's response to the questions contained on Form 1-867B, and the alien shall sign and initial each page of the statement. 8 C.F.R. § 235.3(b)(2)(i).

Further, the examining immigration officer must advise the alien of the charges against him or her on Form I-860 (Notice and Order of Expedited Removal), and the alien must be given an opportunity to respond to those charges in the sworn statement. 8 C.F.R. § 235.3(b)(2)(i), (b)(7). Interpretative assistance must be used if necessary to communicate with the alien. *Id.*

Under Section 1225, "an alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'" *Jennings v. Rodriguez*, --- U.S. ---, 138 S. Ct. 830, 836-37 (2018) (citing § 1225(a)(1)). "Applicants for admission" must "be inspected by immigration officers" to ensure they may be admitted into the country consistent with U.S. immigration law. 8 U.S.C. § 1225(a)(3). The immigration officer (exercising delegated authority from the Attorney General) may, in his or her discretion, permit any alien applicant for admission to withdraw his or her application for admission in lieu of expedited removal proceedings under 8 U.S.C. § 1225(b)(1). 8 C.F.R. § 235.4; *see* 8 U.S.C. § 1225(a)(4). The regulations further state that the "alien's decision to withdraw his or her application for admission must be made voluntarily, but nothing in this section shall be construed as to give an alien the right to withdraw his or her application for admission." 8 C.F.R. § 235.4.

## A. Defendant May Bring a Challenge to the Validity of an 8 U.S.C. § 1225 Expedited Removal Order in a Prosecution under 8 U.S.C. § 1326(a)

The threshold question is whether Defendant is entitled to bring a collateral challenge to the validity of his prior expedited removal order on which the § 1326(a) offense is based. Although 8 U.S.C. § 1326(d) provides for a limited judicial review of the underlying order, another section of Title 8 of the United States Code excludes jurisdiction of courts to hear any claim attacking an expedited removal order:

> Limit on collateral attacks—In any action brought against an alien under section 1325(a) of this title *or section 1326* of this title, the court shall not have jurisdiction

to hear any claim attacking the validity of an order of removal entered under subparagraph (A)(i) or (B)(iii).

8 U.S.C. § 1225(b)(1)(D) (emphasis added).  The reference to "subparagraph (A)(i)" is to 8 U.S.C. § 1225(b)(1)(A)(i), which applies to arriving aliens and to aliens who had not been admitted or paroled into the United States and who have not affirmatively shown they have been in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility.  The Attorney General, as noted above, included aliens "encountered within 14 days of entry without inspection and within 100 air miles of any U.S. international border" as subject to expedited removal at the time of Defendant's 2016 expedited removal proceedings.

Defendant contends § 1225(b)(1)(D) contradicts the Supreme Court's holding that its cases establish that "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding."  (Dkt. 29 at 3 (quoting *Mendoza-Lopez v. United States*, 481 U.S. 828, 837-38 (1987) (emphasis in original))).   Defendant asserts that to the extent § 1225(b)(1)(D) precludes that review, there is a direct conflict with *Mendoza-Lopez* and the constitutional principle prevails over the statute.  Defendant notes, however, that before reaching the question of constitutionality, this Court should apply the doctrine of constitutional avoidance.  *See Jean v. Nelson*, 472 U.S. 846, 854 (1985) ("Prior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decisions.").

1.      **Section 1225(b)(1)(D) Does Not Bar Use of Expedited Removal Orders as a Basis for Section 1326(a) Prosecutions**

Recognizing 8 U.S.C. § 1225(b)(1)(D) appears to strip this Court's jurisdiction to hear a collateral attack on the validity of his prior expedited removal order, Defendant argues that § 1225(b)(1)(D) is unconstitutional or, in the alternative, that Congress did not intend expedited

removal orders to be predicates to a prosecution under § 1326(a). (Dkt. 29 at 3-7). Defendant argues that the constitutional question may be avoided by construing the statute to prohibit the use of expedited removals in § 1326 prosecutions while allowing such removals to continue to be used in civil proceedings to remove aliens from the United States. (Dkt. 29 at 4-5). Defendant asserts that it is reasonable to conclude that Congress would choose to enact an expedited proceeding to process large numbers of people for removal while insulating the civil removal proceedings from criminal prosecutions. (Dkt. 29 at 5). Defendant's counsel, however, "freely admits this is not the most obvious reading of § 1225(b)(1)(D)" but argues that it is the only interpretation that avoids conflict with *Mendoza-Lopez* and the Due Process Clause. (Dkt. 29 at 6).

"When a serious doubt is raised about the constitutionality of an act of Congress, it is a cardinal principle that [courts] will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Jennings*, 138 S. Ct. at 842 (quotation marks omitted). However, "[t]he canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction." *Id.* 138 S. Ct. at 842 (quotation marks and citation omitted). Defendant's approach is contrary to the plain language of § 1225(b)(1)(D) and is contrary to § 1326, which contains no exception for expedited removal orders from those orders which may serve as a basis for prosecuting a reentering alien. Under the plain language of § 1225(b)(1)(D), Congress removed from court review the ability to hear "any claim attacking the validity" of an expedited removal order as part of a collateral attack "[i]n any action brought against an alien under . . . section 1326 of this title." This language makes clear that § 1326 prosecutions could and would be based on prior expedited removal orders. Otherwise, there would be no reason to exclude court review. Indeed, § 1225(b)(1)(D) specifically states that a court in an action brought against an alien under

§ 1326 "shall not have jurisdiction to hear any claim attacking the validity of an order of removal entered under" the expedited removal provisions of § 1225.

Defendant's contention that an expedited removal order cannot serve as a predicate to a § 1326 prosecution, therefore, is untenable. As a consequence, however, the question of the constitutionality of § 1225(b)(1)(D) will be considered. *See United States v. Barajas-Alvarado*, 655 F.3d 1077, 1087 (9th Cir. 2011) ("Because we cannot flout the intent of Congress to make § 1326 applicable to aliens who were removed from the United States via an expedited order of removal, and because we cannot ignore the language in § 1225(b)(1)(D) clearly contemplating that such orders would be used as predicates in § 1326 prosecutions, we likewise cannot avoid reaching the constitutional issue raised by *Mendoza-Lopez*.").

## 2. Constitutionality of 8 U.S.C. § 1225(b)(1)(D)

Defendant argues that if § 1225(b)(1)(D) is applicable to § 1326(a) prosecutions based on a prior expedited removal order, as the Court has determined above, it is unconstitutional. Defendant relies primarily on *Mendoza-Lopez*, which considered a version of § 1326 before the addition of § 1326(d) and enactment of the Expedited Removal Statute. The *Mendoza-Lopez* Court addressed a situation where the aliens had a statutory right to direct judicial review of a deportation order initially but were effectively deprived of that right due to procedural errors in the deportation hearing. The Supreme Court first concluded that the text and background of § 1326, as it then existed, indicated no congressional intent to allow challenges to deportation orders in proceedings under that section. The Court then held that "[i]f the statute envisions that a court may impose a criminal penalty for reentry after *any* deportation, regardless of how violative of the rights of the alien the deportation proceeding may have been, the statute does not comport with the constitutional requirement of due process." 481 U.S. at 837 (emphasis in original).

The Supreme Court noted that its prior cases established that "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding." 481 U.S. at 837-38 (emphasis in original). When defects in the administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before an administrative order may be used to establish conclusively an element of a criminal offense. *Id*. Defendant contends that if the Court construes § 1225(b)(1)(D) to allow prosecution based on an expedited removal order while also barring the Court from considering the merits of a collateral attack on that removal order, that bar would be in irreconcilable conflict with *Mendoza-Lopez* because there would never be "some meaningful review" of the expedited removal proceeding. (Dkt. 29 at 7).

Defendant, noting that the Fourth Circuit has not considered the issue, cites decisions of two other circuit courts of appeal which have addressed the constitutionality of § 1225(b)(1)(D). One of the circuit court opinions, however, did rule on the issue. *See United States v. Lopez-Vasquez*, 227 F.3d 476, 486 (5th Cir. 2000). The other circuit court decision cited by Defendant did.

In *United States v. Barajas-Alvarado*, 655 F.3d 1077 (9th Cir. 2011), the Ninth Circuit directly addressed the constitutionality of § 1225(b)(1)(D). The Ninth Circuit noted that *Mendoza-Lopez* addressed a situation where aliens were effectively deprived of a statutory right of direct judicial review due to procedural errors in the deportation hearing but found the principle established by *Mendoza-Lopez* to be equally applicable in the expedited removal order context. The Ninth Circuit concluded that the principle that aliens must have "some meaningful review" of their removal proceedings if the resulting order was to play a critical role in a subsequent

prosecution, applied equally in the expedited removal order context. 655 F.3d at 1083 ("*Mendoza-Lopez* protects a defendant's right *in a criminal prosecution* to challenge a predicate removal order, and nothing in *Mendoza-Lopez* suggests that a criminal defendant should lose such protection merely because the defendant was a non-admitted alien at the time the predicate removal order was issued.").

The Government argues that *Mendoza-Lopez* is distinguishable because the defendants in that case were deported following their arrest in Nebraska, 481 U.S. at 830, and, therefore, were within the geographic borders of the United States and protected by full due process. The Government asserts that the Due Process Clause does not apply to "arriving aliens," including those subject to expedited removals. As support, the Government cites *Zadvydas v. Davis*, 533 U.S. 678 (2001), a case decided subsequent to *Mendoza-Lopez*. In *Zadvydas*, the Supreme Court addressed the right of aliens who were admitted to the United States but subsequently ordered removed to challenge being held indefinitely in post-removal detention. 533 U.S. at 682. The Court noted that "[a]liens who have not yet gained initial admission to this country would represent a very different question." *Id.* The Court, however, stated that "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." 533 U.S. at 693. The Court notes at this point that the Government refers consistently to "arriving aliens" in its brief (Dkt. 38 at 3-5) and Defendant's Motion states that he was "encountered at the border." (Dkt. 29 at 1). At the hearing, Defendant's counsel stated that Defendant was apprehended inside the United States. This is consistent with documents from Defendant's expedited removal proceeding which indicate Defendant was found close to, and

shortly after crossing, the border. (*See* Dkts. 29-3, 29-4).[2]  In any event, the Court will find Defendant is entitled to collateral review.

In *Barajas-Alvarado*, the Government argued that non-admitted aliens are not entitled to any procedural protections at all and, therefore, any procedural errors in the issuance of an expedited removal order would have no legal import and would not be subject to review in a subsequent criminal proceeding.  The Ninth Circuit rejected this argument.  Acknowledging that it had previously held non-admitted aliens were not entitled to any procedure vis-à-vis their admission or exclusion, the Ninth Circuit concluded that when Congress enacts a procedure, aliens are entitled to it.  655 F.3d at 1084; *see United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.").  The Ninth Circuit held that *Mendoza-Lopez* applied to alien criminal defendants seeking to challenge expedited removal orders used as predicates in § 1326 prosecutions.  *Id.*  Thus, the Ninth Circuit concluded, § 1225(b)(1)(D) "is unconstitutional *to the extent* it prohibits 'some meaningful review' in a § 1326 criminal prosecution of a claim that the proceeding that resulted in the expedited removal order was fundamentally unfair . . . ."  655 F.3d at 1087  (emphasis added).

Here, the Government asserts that drawing a distinction between arriving aliens and those already within the United States makes sense because *Mendoza-Lopez* makes reference to due

---

[2] The regulations addressing expedited removals state that the provisions apply to two classes of individuals: (1) "Arriving aliens, as defined in 8 C.F.R. 1.2" and (2) "aliens who arrive in, attempt to enter, or have entered the United States without having been admitted or paroled following inspection by an immigration officer at a designated port-of-entry" and who have not established they were physically present in the United States continuously for the 2-year period prior to the date of determination of inadmissibility.  8 C.F.R. § 235.3(b)(1).  "An arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry . . . ."  8 C.F.R. § 1.2.

process violations being a necessary predicate to a collateral attack. (Dkt. 38 at 4). This is supported by courts' construction of *Mendoza-Lopez* "as barring use of a prior deportation order in a § 1326 prosecution when (1) error in the deportation proceedings renders the proceeding fundamentally unfair in violation of due process, and (2) the error functionally deprived the alien of the right to judicial review." *United States v. Mendez-Morales*, 384 F.3d 927, 929 (8th Cir. 2004). In essence, the Government contends that an alien in an expedited removal procedure could never show that a due process violation occurred because he has no due process rights during that proceeding. As a result, the Government concludes, any defendant expeditiously removed under Section 1225(b)(1) "will never be permitted to collaterally attack his removal under *Mendoza-Lopez*, its progeny, and 1326(d). Congress, recognizing this, appropriately prohibited such collateral attacks." (Dkt. 38 at 4-5).

In considering the constitutionality of § 1225(b)(1)(D), *United States v. Silva*, 313 F. Supp. 3d 660 (E.D. Va. 2018), is instructive. In that case, the district court concluded as a matter of first impression in the Fourth Circuit that § 1225(b)(1)(D) is unconstitutional to the extent it prohibits, in a subsequent § 1326(a) prosecution, some meaningful review of a defendant's claim that the underlying expedited removal proceeding was fundamentally unfair.

The *Silva* court ultimately held that even given the minimal due process rights to which arriving aliens are entitled, "it cannot be said that they have *no* due process rights and therefore could never make out a claim of fundamental unfairness under *Mendoza-Lopez*. Considered in the full statutory and constitutional context, the United States' arguments about an arriving alien's lack of due process rights or inability to collaterally attack his or her removal cannot persuade." 313 F. Supp. 3d at 675-76 (emphases in original). This holding was based on findings that notwithstanding the Government's argument, no dispute could exist that the Expedited Removal

Statute requires *some* process before an immigration officer may remove an arriving alien pursuant to that statute. 313 F. Supp. 3d at 675 (citing 8 C.F.R. § 235.3(b) (describing the procedures for entering an order of expedited removal) and *Barajas-Alvarado*, 655 F.3d at 1088 (discussing "the applicable procedures" in an expedited removal proceeding)).[3]

The Government in this case has failed to demonstrate that aliens arriving in the United States, and in particular this Defendant, have *no* due process rights. Rather, they have at least such rights as provided by the statutes and regulations. As did the courts in *Barajas-Alvarado* and *Silva*, this Court finds Section 1225(b)(1)(D) constitutional except "to the extent it prevents '*some meaningful review*'." *Barajas-Alvarado*, 655 F.3d at 1087; *Silva*, 313 F. Supp. 3d at 676. The Court will, therefore, consider the validity of the underlying removal order and whether Defendant's collateral attack succeeds.

**B.** **Defendant's Collateral Attack Fails Because He Has Not Established That Entry of His Prior Removal Order Was "Fundamentally Unfair"**

If Defendant is entitled to "some meaningful review," 8 U.S.C. § 1326(d) provides a framework for that review. *See United States v. Moreno-Tapia*, 848 F.3d 162, 165-66 (4th Cir. 2017) ("Congress responded by codifying the principle of *Mendoza-Lopez* in 8 U.S.C. § 1326(d)."). To prevail on a motion to dismiss an indictment based on the invalidity of the underlying removal, an alien must demonstrate that:

---

[3] The court in *Silva* denied the motion to dismiss because the defendant failed to establish that his prior deportation proceeding was "fundamentally unfair." 313 F.3d at 676-83. Defendant entered into a plea agreement and, following sentencing, appealed to the Fourth Circuit court of appeals. *United States v. Silva*, No. 3:13cr125 (E.D. Va.) (Dkt. 39, 55). A decision from the Fourth Circuit had not issued as of the time of this Opinion. A second judge in the Eastern District of Virginia also concluded that a defendant charged under § 1326 based on a § 1225 expedited removal order may collaterally attack that order under § 1326(d). *United States v. Siles*, No. 1:19-cr-127, 2019 WL 2906307 at *6 (E.D. Va. July 5, 2019) ("Although it may be the rare case in which someone subject to an expedited removal can carry her burden in a § 1326(d) collateral attack, the Constitution guarantees each defendant the right to try.").

(1)       the alien exhausted any administrative remedies that may have been available to seek relief against the order;

(2)       the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

(3)       the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). "[T]hese three factors . . . are concerned with procedural irregularities in immigration proceedings that may insulate the resulting orders from judicial review, making it fundamentally unfair to rely on those orders in later criminal prosecution." *Moreno-Tapia*, 848 F.3d at 166.

The Government addresses only whether the removal order was fundamentally unfair under § 1326(d)(3). Thus, the Court need only consider whether Defendant demonstrates that the removal order was fundamentally unfair. To demonstrate fundamental unfairness, a defendant must show that (1) his or her due process rights were violated by defects in the underlying deportation proceedings, and (2) he or she suffered prejudice as a result of the defects. *El Shami*, 434 F.3d at 664-65; *United States v. Lopez-Collazo*, 824 F.3d 453, 460 (4th Cir. 2016). Thus, the defendant bears the burden of establishing both that the deportation proceeding violated his due process rights and that the violation caused prejudice. *United States v. Raya-Vaca*, 771 F.3d 1195, 1201-02 (9th Cir. 2014).

**1.      Defendant's Due Process Rights Were Not Violated**

Defendant asserts that he had a due process right to counsel during his expedited removal proceedings. Defendant concedes that the record suggests he was notified he had a right to counsel if he wanted to apply for asylum "but not that he was told he had a right to counsel before answering any questions or deciding how to proceed with his case." (Dkt. 29 at 10). In asserting he had a right to counsel and notice of that right, Defendant makes clear that he is not asserting a

right under the Sixth Amendment. Rather, Defendant's counsel stated at oral argument that Defendant's position is based on a Fifth Amendment due process argument with respect to an ability to obtain counsel before questioning in an expedited removal proceeding. (*See also* Dkt. 29 at 10).

Defendant argues that he had a right to counsel and to notice of that right. This failure, Defendant contends, violated fundamental due process and the regulations. (Dkt. 29 at 10). Defendant does not point to a specific provision of Title 8 which specifies a right to counsel in expedited removal proceedings under § 1225(b), although he does argue that the Administrative Procedures Act provides a right to counsel and applies to such proceedings. Rather, Defendant argues that the balancing test of *Mathews v. Eldridge*, 424 U.S. 319 (1976), applies and warrants a finding that he had a due process right to counsel.

### a.     Statutory and Regulatory Provisions

Defendant asserts that the failure to inform him that he had a right to counsel before answering any questions violated "fundamental due process and the regulations." (Dkt. 29 at 10). Defendant points to the regulatory provision that "the alien shall be given an opportunity to respond" to the charges of inadmissibility. *See* 8 C.F.R. § 235.3(b)(2)(i). Separately, Defendant asserts that the Administrative Procedures Act provisions regarding a right to counsel apply in expedited removal proceedings.

Although Defendant appears to suggest the opportunity to respond includes a right to legal counsel in responding, the regulations do not support such a sweeping conclusion. The sentence quoted by Defendant provides that the examining immigration officer shall inform the alien of the charges and "the alien shall be given an opportunity to respond to those charges in a sworn statement." 8 C.F.R. § 235.3(b)(2)(i). As shown by exhibits to Defendant's motion, Defendant

was given that opportunity and a record of the facts of the case and statements made by Defendant were recorded.  The documents in the record in this case track the regulatory requirements specific to the expedited removal process, which are described above.

Further, the implementing regulations demonstrate that the opportunity to respond did not imply a right to counsel.  First, no such right is specified in the expedited removal proceedings statute or implementing regulations.  Second, other statutes and regulations demonstrate that a right to counsel was not intended for those subject to § 1225(b) expedited removal proceedings generally.  For example, Congress expressly provided that in a non-expedited removal proceeding the alien would have the privilege of being represented, at no expense to the Government, by counsel of the alien's choosing who is authorized to practice in such proceedings.  8 U.S.C. § 1229a(b)(4)(A); *see* 8 C.F.R. § 287.3 ("Except in the case of an alien subject to the expedited removal provisions [under § 1225(b)(1)(A)], . . . an alien arrested without a warrant and placed in formal proceedings . . . will be advised of the reasons for his or her arrest and the right to be represented at no expense to the Government.  The examining officer will provide the alien with a list of the available free legal services provided by organizations and attorneys . . . .").  Similarly, Congress provided that those subject to expedited removal who are eligible for credible fear interviews "may consult with a person or persons of the alien's choosing prior to the interview or any review thereof."  8 U.S.C. § 1225(b)(1)(B)(iv).  The record of Defendant's prior removal show that Defendant stated that he did not fear a return to his home country and, therefore, there was no need for a credible fear determination.

Defendant argues that even if the immigration regulations specific to expedited removal proceedings do not provide a right to counsel, the provision of the Administrative Procedures Act ("APA") regarding a right to counsel applies here.  Defendant relies primarily on 5 U.S.C. §

555(b), which provides, in part: "A person compelled to appear in person before an agency or representative thereof is entitled to be accompanied, represented, and advised by counsel. . . . A party is entitled to appear in person or by or with counsel or other duly qualified representative in an agency proceeding." Defendant notes that the APA also provides that a "[s]ubsequent statute may not be held to supersede or modify [§ 555(b)] . . . except to the extent that it does so expressly." (Dkt. 39 at 6 (quoting 5 U.S.C. § 559)). Defendant asserts that § 1225 does not specifically exempt itself from 5 U.S.C. § 555 or from the right of access to counsel that it provides and, therefore, a right to counsel exists in expedited removal proceedings by virtue of the APA.

In *Marcello v. Bonds*, 349 U.S. 302 (1955), the Supreme Court held that the INA expressly superseded the hearing provisions of the APA. 349 U.S. at 308-10 ("[I]t is clear that Congress was setting up a specialized administrative procedure applicable to deportation hearings, drawing liberally on the analogous provisions of the [APA] and adapting them to the particular needs of the deportation process."); *see Ardestani v. I.N.S.*, 502 U.S. 129, 134 (1991). To be sure, the immigration statutes have changed since *Marcello* and in some situations the APA has been applied by the courts to certain immigration matters. Defendant cites to cases in which courts have applied other § 555(b) requirements to immigration proceedings but none of the cases address a right to counsel which is a part of an expedited proceeding itself.

The Court concludes that the APA's provision regarding representation by counsel does not apply to an expedited removal hearing under § 1225(b)(1). First, when Congress passed the legislation including the expedited removal procedures, it did so against the background of the holdings in *Marcello* and *Ardestani*, which had established the general proposition that the APA did not apply to immigration proceedings, at least with respect to hearings. Second, application of the APA's provision regarding a right to counsel to expedited removals runs counter to the

intent of a simplified, expedited process with limited issues considered. Third, and critically, when Congress intended an alien to have a right to counsel, it knew how to make that right clear as noted above. Congress would not have needed to do so in those other statutory removal provisions had it considered the right to counsel under the APA to apply generally to removal statutes. None of the cases cited to the Court apply the APA's right to counsel provision to a § 1225 expedited removal proceeding and the Court finds no indication that that Congress intended for the APA's right to counsel to so apply.

Defendant has not shown the violation of a due process right provided by the regulations or by the APA.

### b.      General Constitutional Due Process

Defendant argues that he had a fundamental due process right to counsel during an expedited removal proceeding. Even if Defendant is an alien to whom the Due Process Clause applies because he entered the country at other than a port-of-entry, he fails to demonstrate that he had a due process right to counsel, at his own expense, or to be notified of that right, during his expedited removal proceeding. In *Mathews v. Eldridge*, which Defendant argues controls here, the Supreme Court considered whether a person whose social security disability benefits had been terminated had a right to an evidentiary hearing before termination. Under *Mathews v. Eldridge*, a court weighs three factors in determining whether a due process right exists: (1) the interest at stake for the individual; (2) the risk of erroneous deprivation of such interest and probable value of safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. 424 U.S. at 335. "The essence of due process is the requirement that a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it. All that is

necessary is that the procedures be tailored, in light of the decision to be made, to the capacities and circumstances of those who are to be heard to ensure that they are given a meaningful opportunity to present their case." 424 U.S. at 348-49 (internal quotation marks and citations omitted) (alteration in original).

Defendant does not cite an opinion in which a court applied *Mathews* to find an alien in his position, and subject to a § 1225 expedited removal proceeding, to have a due process right to counsel. One opinion which applied *Mathews* to § 1125 expedited removal proceedings concluded that aliens subject to such proceedings who illegally enter the United States are not constitutionally entitled to counsel. *United States v. Peralta-Sanchez*, 847 F.3d 1124 (9th Cir. 2017), *opinion withdrawn*, 868 F.3d 852 (9th Cir. 2017), *and on rehearing*, 705 F. App'x 542 (9th Cir. 2017). The opinion, however, was withdrawn and on rehearing the Ninth Circuit disposed of the case under the prejudice prong of § 1326(d)(3) and did not undertake a further analysis under *Mathews*. 705 F. App'x 542. The original opinion found that with respect to an alleged right to obtain counsel in § 1225(b) expedited removal proceedings: (1) the nature of the private interest at stake was limited; (2) the risk of error was low; and (3) the Government's interest was substantial. 847 F.3d at 1135-39.

The Court finds instructive *dicta* from *Silva*. Although the court in *Silva* concluded the defendant in that case could not satisfy the prejudice prong of § 1326(d)(3) and was not entitled to relief, the court indicated that it had serious doubts as to whether the defendant could show a due process right to counsel in an expedited removal proceeding. The court noted that binding Fourth Circuit law holds that "because removal proceedings are not criminal proceedings, aliens facing removal are not entitled to the Sixth Amendment's right to counsel, nor to the associated right to effective counsel." 313 F. Supp. 3d at 677 n.17 (quoting *Afanwi v.Mukasey*, 526 F.3d 788, 796

(4th Cir. 2008) (citing holdings of circuit courts), *vacated on other grounds by Afanwi v. Holder*, 558 U.S. 801 (2009)).  The court noted that in briefing the defendant "appeared to unsuitably sidestep this binding law" by attempting to ground his asserted right to counsel at an expedited removal proceeding in the "procedural due process right to counsel" balancing test under *Mathews*. *Id.*

In *Silva*, defendant's counsel clarified at oral argument that he intended to rest his right-to-counsel argument on his Fifth Amendment right against self-incrimination in a soon-to-be-brought criminal proceeding and that his request for counsel at the removal proceeding was for the purpose of advising him on whether to invoke his Fifth Amendment right there.  The court concluded that that explanation did not change the court's analysis:

> Although declining to decide whether a Fifth Amendment right to counsel exists in the context of immigration proceedings, or whether the possibility of subsequent prosecution based on statements made in an immigration proceeding confers such a right, the Court notes that the Fourth Circuit has expressly held "there is no Fifth Amendment right to *effective* assistance of counsel during the course of removal proceedings."  *Cruz v. Holder*, 321 Fed. Appx. 280, 281 (4th Cir. 2009) (per curiam) (emphasis added) (citing *Massis v. Mukasey*, 549 F.3d 631, 637 (4th Cir. 2008); *Afanwi*, 526 F.3d [526 F.3d 388] at 799).  Given the Fourth Circuit's holding that no constitutional right to *effective* assistance of counsel under the Fifth Amendment exists in removal proceedings, *see id.*, the Court finds it unlikely that any right to assistance of counsel in removal proceedings exists under the Fifth Amendment at all. However, because [the defendant] fails to establish any prejudice resulting from any asserted due process violation, the Court need not reach that issue.

313 F. Supp. 3d at 577 n.17.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  *Mathews*, 424 U.S. at 333.  Defendant received this due process.  Aliens have a private interest in not being removed and thereby deprived of the opportunity to live and work in the United States and to not being barred from returning for at least five years.  The Government would entail additional fiscal and administrative burdens due to

delays and associated costs which would not be otherwise incurred.  With respect to a risk of erroneous deprivation, in § 1225 expedited removal proceedings the immigration officer is required to advise an alien of specific rights, to determine only whether the subject is an alien and whether he or she has valid documentation to enter or remain in the United States, and to make limited findings as noted above.[4]  *See* 8 U.S.C. § 1225(b)(1).  Further, aliens who claim a fear of persecution if returned to their homeland, who seek asylum, or who claim to be a lawful permanent resident are entitled to further process under § 1225 before additional removal proceedings can take place.  *See* 8 U.S.C. § 1225(b)(1)(A)(i); 8 C.F.R. § 235.3(b)(4), (5).  Under *Mathews*, "[a]ll that is necessary is that the procedures be tailored, in light of the decision to be made, to the capacities and circumstances of those who are to be heard . . . to ensure that they are given a meaningful opportunity to present their case."  424 U.S. at 348-49.  In balancing the factors, the Court finds that on the record in this case, they do not warrant a finding of a right to counsel, or notice of a right to counsel, in Defendant's expedited removal proceeding.

Therefore, Defendant has not shown a violation of any due process right.  As a result, Defendant cannot show that his expedited removal proceeding was fundamentally unfair and the resulting removal order invalid.  Therefore, his motion to dismiss the Indictment will be denied.

---

[4] Few of the justifications given by Defendant bear any relevance to the Defendant.  The more general the challenge to the expedited removal process as written, the greater the possibility of running afoul of 8 U.S.C. § 1252(e)(3).  The Ninth Circuit in *Barajas-Alvarado* held that courts could not address general attacks on the expedited removal process, finding that such claims were limited to actions filed in the United States District Court for the District of Columbia pursuant to 8 U.S.C. § 1252(e)(3).  *See* 655 F.3d at 1086 n.10 ("Though [defendant] purports to raise general challenges to the expedited removal system in an effort to persuade us that they should not be permitted as predicates to § 1326 offenses, § 1252(e)(3) limits general jurisdiction over general challenges to expedited removal proceedings" to "action[s] instituted in the United States District Court for the District of Columbia").  The Defendant argues that aliens have a due process right to counsel in removal proceedings generally and failure to inform him of that right violates due process and the fairness of the proceeding *as to him*.  (Dkt. 39 at 4).

2.    **Defendant Fails to Show Prejudice Because He has not Established a Reasonable Probability that He Would Have Been Allowed to Withdraw His Application for Admission and Avoided the Removal Order**

Even if Defendant was able to establish a violation of due process rights in the underlying removal process, the Defendant must also demonstrate that there was "a reasonable probability that he would not have been deported." *El Shami*, 434 F.3d at 664-65 (considering the "likelihood" the immigration judge would have provided relief at issue). Because a Defendant must show a violation of due process in the denial of a right and prejudice from that denial, the Court need not consider the prejudice requirement of 8 U.S.C. § 1326(d) in light of its conclusion in the preceding subsection. In this case, however, if the Court were to reach the prejudice requirement, Defendant would have to show "a reasonable likelihood that but for the errors complained of, the defendant would not have been deported" pursuant to an order of removal. *See, e.g.*, *Silva*, 313 F. Supp. 3d at 678 (quoting *Wilson v. United States*, 316 F.3d 506, 511 (4th Cir. 2003), *abrogated on other grounds by Lopez v. Gonzales*, 549 U.S. 47 (2006)).

Defendant argues that with counsel's advice there was a reasonable probability he could have withdrawn his application for admission and avoided the 2016 removal order. Defendant relies on *Gonzales v. Duenas-Alvarez*, 549 U.S. 183 (2007), in which the Supreme Court applied the "realistic probability" standard in the context of the categorical analysis applied to determine whether a state statute properly fell under a listed crime in a federal statute as an offense under which certain aliens could be removed. Defendant contends the "realistic probability" standard is indistinguishable from the prejudice standard under § 1326(d). The Supreme Court in *Duenas-Alvarez* held that: "To show that realistic probability, an offender, of course, may show that the statute was so applied in his own case. But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special [] manner for which he argues."

549 U.S. at 193. Defendant then points to a single case, *United States v. Raya-Vaca*, 3:12CR5262-AJB (S.D. Cal.) (Dkt. 18-2), where, he asserts, immigration officers granted withdrawal of application to an individual who had previously been ordered removed, lied to immigration officers, and was convicted of a felony for the lie and was sentenced. Defendant asserts that his circumstances -- no criminal history and no previous entries or removals -- demonstrates he was more likely than Raya-Vaca to have been allowed to withdraw his application. (Dkt. 29 at 19).

An immigration officer (exercising delegated authority from the Attorney General) "may, in his or her discretion, permit any alien applicant for admission to withdraw his or her application" in lieu of removal proceedings under 8 U.S.C. § 1225(b)(1). 8 U.S.C. § 1225(a)(4); 8 C.F.R. § 235.4. The regulations further state that the "alien's decision to withdraw his or her application for admission must be made voluntarily, but nothing in this section shall be construed as to give an alien the right to withdraw his or her application for admission." 8 C.F.R. § 235.4. *See also United States v. Santos-Pulido*, 815 F.3d 443, 446 (8th Cir. 2016) (no constitutional right to withdraw application).

*Duenas-Alvarez* is not applicable here and *Raya-Vaca* is insufficient a comparison to establish that there was a reasonable probability Defendant would have been allowed to withdraw his application for admission had he the help of counsel. *Duenas-Alverez* did not address § 1326(d) but rather involved the question of whether the defendant could point to an example demonstrating that a state statute created a crime outside the generic definition of a listed crime in a federal statute. 549 U.S. at 193. Thus, a single example of a state statute being applied beyond the generic definition of a listed crime would demonstrate that the state court did in fact apply the statute in a non-generic manner. That is not the case with respect to an immigration officer's discretionary decision to permit a particular alien to withdraw his application and the reasoning in *Duenas-*

*Alvarez* provides no guidance of reasonable probability here. Further, if *Raya-Vaca* were given controlling effect, then every alien defendant who had less "bad marks" than any one person ever allowed to withdraw his or her application would assert prejudice because there was a reasonable probability that he or she would have been allowed to withdraw their own application. *See Silva*, 313 F. Supp. 3d at 681 ("applying the *Duenas-Alvarez* standard of 'realistic probability' to the circumstance before the Court improperly wrenches that standard from its context").

Defendant turns to statistics to support his argument that there was a reasonable probability that he would have been permitted to withdraw his application, noting that the appellate decision in *Raya-Vaca* cited statistics that indicated that in fiscal year 2008 44% of aliens subject to expedited removal proceedings were allowed to withdraw their applications (down from 70% in fiscal year 2004). *United States v. Raya-Vaca*, 771 F.3d 1195, 1209 (9th Cir. 2014). The statistics did not include the year of Defendant's expedited removal, which occurred in 2016. Of note, the court of appeals in *Barajas-Alvarado*, one of the opinions on which Defendant relies for being able to challenge his prior removal order, held that the defendant's argument that as a matter of statistics it was plausible he would have received permission to withdraw was foreclosed by a prior Ninth Circuit decision holding that a situation where "discretionary relief applications are granted fifty percent of the time" was insufficient to show plausibility of relief when the alien offered only a general statistic. 655 F.3d at 1091 (citing *United States v. Corrales-Beltran*, 192 F.3d 1311, 1318 (9th Cir. 1999)). Although statistics are not sufficient, they are not excluded from determining "reasonable probability." Defendant, however, presents no statistics close to the time of his removal and the percentage of discretionary relief showed a strong downward trend between 2004 and 2008.

In this case, Defendant has not demonstrated that there was a reasonable probability that he would not have been deported pursuant to a removal order but would have been allowed to withdraw his application for admission had he had the assistance of counsel. Defendant avoided a port-of-entry, which evidences an intent to evade inspection and shows a clear intent to violate the immigration laws. The record does not suggest Defendant was in poor health and there are no stated humanitarian or public interest considerations as Defendant did not seek asylum though being offered the opportunity to do so.[5] In light of the discretionary nature of the decision to permit a withdrawal of application and the above considerations, the Court concludes that Defendant has failed to demonstrate that there was a reasonable probability that had he had access to counsel that he would not have been deported under a removal order.

## IV.    CONCLUSION

Congress did not intend to exclude prior expedited removal orders from serving as the basis for subsequent prosecutions under 8 U.S.C. § 1326. Any such interpretation would ignore Section 1225(b)(1)(D)'s express bar of judicial review of the underlying expedited removal order in a Section 1326 prosecution.

---

[5] Defendant states that before mid-2013, immigration officers considering whether to allow withdrawal of an application consulted a list of factors in the Customs and Border Protection Inspector's Field Manual, citing *United States v. Raya-Vaca*, 771 F.3d 1195, 1207 (9th Cir. 2014). Defendant states that the current standards, if there are any, are unknown. (Dkt. 29 at 9). The Ninth Circuit in *Raya-Vaca* noted an INS Inspector's Field Manual which set out six non-exhaustive factors relevant to the question of relief. 771 F.3d at 1207 (listing nonexclusive factors: (1) the seriousness of the immigration violation; (2) previous findings of inadmissibility against the alien; (3) intent on the part of the alien to violate the law; (4) ability to easily overcome the ground of inadmissibility; (5) age or poor health of the alien; and (6) other humanitarian or public interest considerations). Although the parties have not presented evidence of what factors an immigration officer would consider in March 2016, when Defendant was removed, these factors logically address whether it was reasonably likely Defendant would have been allowed to withdraw his application.

The underlying removal order, however, is entitled to some meaningful review. Even so, Defendant fails to establish that the expedited removal proceeding was fundamentally unfair because he cannot show that his due process rights were violated by defects in the underlying deportation proceeding nor that he suffered prejudice as a result of a defect.

Accordingly, the Court will deny Defendant's Motion to Dismiss the Indictment (Dkt. 29).

The Clerk of the Court is directed to send certified copies of this Memorandum Opinion and accompanying Order to all counsel of record.

**ENTERED** this ⎯17th⎯ day of July, 2019.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE